UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEODORO IGLESIAS and PATRICIA IGLESIAS | CIVIL ACTION |
| VERSUS | NO: 07-8231 |
| CHEVRON U.S.A. INC. and CHEVRON U.S.A. HOLDINGS, INC. | SECTION: "A" (4) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 67)** filed by the Defendant, Chevron U.S.A. Inc., ("Chevron"). Plaintiff, Trustee of the Bankruptcy Estate, W. Steve Smith, opposes the motion.[1] The motion, set for hearing on August 5, 2009, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of an injury suffered by Teodoro Iglesias on a the VR-245-F, a fixed oil platform owned by Chevron and located in the Gulf of Mexico off the coast of Louisiana. Chevron entered into a contract with Grand Isle Shipyard, Inc. ("GIS") to provide services such as scaffold

---

[1] W. Steve Smith was substituted as party plaintiff on February 12, 2009. (Rec. Doc. 55).

building and construction for projects on the platform. While working aboard the Chevron VR-245-F as a GIS scaffold builder on November 14, 2006, Iglesias allegedly suffered injuries to his lower back, neck, hip, and legs. At the time of the accident, Chevron had one employee (Scott Hebert) on the CR-245-F, who was present to supervise the construction project. At a meeting that morning, Hebert advised the workers that a supply vessel would be arriving at the platform and that it would need to be unloaded.[2] Later that morning, Iglesias was attempting to unload boxes of drinking water out of a cargo basket– each weighed approximately fifty pounds–when he was injured.[3] Since the accident, Iglesias has not returned to work and has received medical care.

Teodoro and Patricia Iglesias filed suit against Chevron on November 7, 2007, stemming from the accident. On October 1, 2007, the Plaintiffs filed for protection under Chapter 13 of the United States Bankruptcy Code in the Southern District of Texas. On July 14, 2008, Chevron filed a Motion to Dismiss on grounds of judicial estoppel based on the Plaintiff's failure to list the cause of action as an asset on bankruptcy schedules. (Rec. Doc. 23). The Bankruptcy Trustee was subsequently substituted as party plaintiff, and the Court denied the Motion to Dismiss. (Rec. Doc. 66).

Chevron filed this Motion for Summary Judgment asking the Court to dismiss the claims of the Plaintiff. Chevron argues that it can not be held liable for the injuries of Iglesias because the evidence proves that it did not exercise any operational control over the independent contractor through its "companyman," Scott Hebert. (MSJ p. 9-15). Further, Chevron argues that it has no liability with respect

---

[2] The supply vessel was carrying supplies for the jobs, as well as food and water for the workers. The cargo container in question contained both supplies and food/water.

[3] The parties dispute the facts surrounding the 11/14/06 accident.

to the loading of the cargo basket, as that was done by a third party. (*Id.* at 15-16). Finally, Chevron argues that under the contract between it and GIS, the independent contractor is responsible for the safety practices on the job and Chevron has no duty to intervene. (*Id.* at 17-18).

In opposition, the Plaintiff argues that the Chevron companyman, Scott Hebert, did exercise operational control over the GIS employees because he ordered them to do work outside the scope of their contract. (Mem. In Opp. p. 5-6). Thus, according to the Plaintiff, Chevron is liable under an exception to the general rule that a principal is not liable for the acts of an independent contractor. (*Id.*). The Plaintiff further argues that Chevron's employee gave an unsafe order that created the hazard that ultimately injured the Plaintiff, thus Chevron is liable for its own negligence. (*Id.* at 7-8). The Plaintiff argues that these disputes over issues of material fact should preclude summary judgment.

In supplemental and reply memoranda, Chevron argues that the depositions of both Chevron and GIS employees indicate that Hebert gave no "how to" instructions, which it argues would be necessary to exercise operational control. (Supp. Mem. p. 5-10). Further, Chevron argues that GIS was responsible for unloading cargo baskets on the platform. (Repl. Mem. p. 3–4).

The Court must determine whether Chevron is entitled to summary judgment on the issue of negligence as a principal, as well as the alleged unsafe order given by its employee regarding the manner in which the cargo loading and unloading took place.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light

most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

### *B. Law and Analysis*

The parties agree that under § 1333(A)(2) of the Outer Continental Shelf Lands Act ("OCSLA"), Louisiana law governs this negligence action as the state adjacent to the seabed where the Plaintiff was injured. Under the duty-risk analysis applied in Louisiana, the duty of the defendant is a question of law for the Court. *Mundy v. Department of Health and Human Resources*, 620 So.2d 811,813 (La. 1993). Thus, to survive summary judgment, the Plaintiff must prove that Chevron owed him a duty of care.

Louisiana law provides the well-established rule that a principal is not liable for the negligent acts of an independent contractor in the course of performing a contract. *Graham v. Amoco Oil Co.*, 21 F.3d

643, 645 (5th Cir. 1994); *Batholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987). There are two exceptions to the general rule: (1) if the activity is ultrahazardous, or (2) if the principal exercises operational control over the independent contractor's performance. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), *cert. denied*, 108 S.Ct. 1593 (1988). Here, the parties agree that the ultrahazardous activity exception does not apply, but dispute the operational control exception.

Chevron contends that Hebert did not give "how to" instructions and mere supervision alone is not sufficient to constitute operational control. The Plaintiff argues in response that the Chevron companyman, Scott Hebert, exercised operational control over the operations of GIS because he ordered the employees to do work (unloading cargo out of the basket) outside the scope of their contract. The Fifth Circuit has long held that there is no operational control unless the principal retains control over the methods and manner of the work, *i.e.*, gives "how to" instructions to the independent contractor. *Grammar v. Patterson Services, Inc.,* 860 F.2d 639, 645 (5th Cir. 1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190 (1989). The Court is unpersuaded by the Plaintiff's arguments, and finds his assertions to be unfounded. Contrary to the Plaintiff's assertions in his complaint that Hebert ordered Iglesias to unload the basket, the Plaintiff testified that his supervisor, Dwayne McGlothin, instructed him to unload the basket once it was on the platform. (MSJ p. 3-6, Def. Exh. C). Rather, Hebert gave general instructions to the crew that morning that a supply vessel as coming and would need to be unloaded. (*Id.*).

GIS employee Michael Garcia also testified that Hebert never gave specific instructions to the GIS workers. (Def. Supp. Mem. In Sup. p. 4). Rather, he testified that GIS Supervisor Dwayne McGlothin gave instructions regarding specifics of unloading. (*Id.*). Further, the Plaintiff, Hebert, and GIS employees have all testified that Hebert gave no "how to" instructions regarding the unloading of the

5

baskets. (*Id.* at 4-8; MSJ p. 3-6, Def. Exh. C). The mere right of supervision is not sufficient to exercise operational control. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989); *see also Wallace v. Oceaneering International, Inc.*, 727 F.2d 427 (5th Cir. 1984); *Etheridge v. Subsea International, Inc.*, 1992 WL 116031 (E.D. La. 1992)(Carr, J.).

Further, the Plaintiff's argument that the work was outside the scope of the contract and therefore created operational control is not supported by the law or the evidence before the Court. Dwayne McGlothin, a GIS employee, testified that GIS was responsible for unloading cargo baskets, had done it hundreds of times, and that they needed no supervision to do the job. (Def. Second Supp. Mem. In Supp. p. 4-5, 8.). In sum, the evidence before the Court shows that while Hebert did retain general supervisory power over the reoccurring tasks to be performed, he did not control the work of the GIS employees or give "how to" instructions regarding unloading. Therefore, the Court finds that the operational control exception does not apply, and Chevron is entitled to summary judgment as to this claim.

Even if the general rule shields a principal from the acts of its independent contractor, the principal remains liable for its own acts of negligence. *Ellis v. Chevron U.S.A. Inc.*, 650 F.2d 94, 97 (5th Cir. 1981). In determining whether a principal owes a duty to employees of independent contractors, courts consider whether the hazard was created by the principal or the independent contractor. *Thomas v. Burlington Resources Oil and Gas Co.*, 2000 WL 1528082 (E.D. La. 2000)(Barbier, J.). The Plaintiff argues that Hebert gave an unsafe order because he knew of the unsafe practice of mixing groceries and supplies on a cargo basket. However, the cargo basket in this matter was not loaded/unloaded by Chevron employees or at their direction, thus the hazard was not created by Chevron. It is well established that Courts do not require a principal to discover and correct unsafe loading procedures performed by

independent contractors. *Id.* at *2; *see also Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994).[4]

Thus, Chevron had no duty of care to the Plaintiff under these facts.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 67)** filed by the Defendant, Chevron U.S.A. Inc., ("Chevron") is **GRANTED**. All claims against Chevron are dismissed with prejudice.

August 15, 2009

 _____
 JAY C. ZAINEY
 UNITED STATES DISTRICT JUDGE

---

[4] In this matter, as in *Graham*, the contract between Chevron and GIS states that GIS is responsible for the safe performance of their job in accordance with safe practices. Def. MSJ p. 17.